P. D. CHENEY, APPELLANT, v. B. WOODRUFF, ET AL., APPELLEES.

P. D. CHENEY, APPELLANT, v. WILLIAM RICHARDS, ET AL., APPELLEES.

1. **Usury:** If the agent of the lender of money takes from the borrower a note and mortgage for the payment of a bonus or commission for making the loan, the transaction is tainted with the vice of usury. Such contract is void, and payment of the money so secured cannot be enforced by action upon the note and mortgage.

2. ——: In law, it makes no difference whether the usurious interest is expressed in terms in the instrument given for the payment of the debt created by the loan, or whether it is taken as a bonus, or as commission, or is secured by any other corrupt agreement, device or shift, at the time of the contract.

APPEAL from the district court of Pawnee county. Tried below before Weaver, J. The two cases were substantially the same and were argued together. The actions in the court below were for the foreclosure of mortgages given to secure the payment of five notes for $70.00 each, due respectively in one two, three, four, and five years from their date. The defense was usury, and that the notes were given as a bonus to secure the loan of $500 at ten per cent interest. A decree was rendered below in each case in favor of defendants, and plaintiff appealed.

*G. M. Humphrey* and *Brown, England & Brown,* for plaintiff.

*T. Appelget,* for defendants.

GANTT, J.

The defendant, B. Woodruff, obtained a loan of five hundred dollars through the plaintiff and one B. F. Per-

kins, to secure which he executed notes and mortgage to Byron Murray, Jr., and at the same time the defendant gave to the plaintiff the notes and mortgage in controversy in this action. This action is brought to foreclose the last mentioned mortgage; and the defendant pleaded that the only consideration of the notes and mortgage was a bonus upon the loan, and that the same is usurious. The court below sustained the defense and dismissed the cause of action, and the case is brought here upon appeal.

The plaintiff resides in the state of Illinois, and Perkins resides in Nebraska, and transacted all the business with the defendant in respect to the loan of the money. The inquiry is, was the transaction tainted with the vice of usury?

Perkins testified that he acted as agent for the defendant; that " all transactions between Cheney (plaintiff) and defendant was done through him, and after the money came he acted as the attorney of Cheney." The proofs further substantially show that prior to the transaction, Perkins had published a card in the newspapers that he had "money to loan in sums of one hundred dollars and upwards for five years, with right to pay at the end of one year." He thus publishes himself as a lender of money; but the proofs show that he was an agent to make loans, and he substantially testifies, in respect to loans made by him, that when collected, the money was generally placed in the bank of Russell & Holmes, and that " in some instances the money was reloaned without being sent back " to the lender. The plaintiff testifies that he was not acquainted with defendant, and had no correspondence with him pending the negotiation for the loan, that Perkins was not his agent in sending the application for the loan; but in contradiction to this he testifies as follows: " Perkins was to superintend the execution of the papers sent by me,

was to examine the abstract of title furnished by Wood-
ruff, to see that the title was good, that the mortgage was
filed.    When everything was completed and made safe,
Perkins was to deliver to Woodruff a check for five
hundred dollars.  From and after the time I sent him the
check to be delivered to Woodruff on the execution of
the notes and mortgage, Perkins was authorized to act
as my attorney to superintend the consummation of the
arrangement I had made, and do any thing in connection
with the same to have the loan properly secured and the
money paid to Woodruff that I could have done had I
been personally present."

From this evidence the fact is clear beyond doubt that
Perkins was a loan agent, and that from the initial point
of negotiation with plaintiff, he was his agent and at-
torney in all matters connected with the transaction.

The plaintiff admits that the only consideration of
the notes and mortgage in the action was "commissions"
to him on the loan made to defendant.   Now, did the
plaintiff act as the agent of Byron Murray in making
the loan?   By letter of attorney, executed in 1872, and
recorded in Johnson county, Nebraska, Byron Murray
empowered and authorized the plaintiff for him to sell,
assign, receive payment of, receipt for, satisfy or release
any note, mortgage, judgment, or certificate of purchase;
to release any lien or claim on real estate, mortgage deed
on real estate, or appoint any person to do the same, and
"this power to be exercised concerning any matter or
thing mentioned in the state of Nebraska."   This gen-
eral authority given to plaintiff must be taken in con-
nection with his evidence in the case.   He testifies that
his occupation is that of "loan agent and land dealer,"
and that he "acted for Woodruff in obtaining the money,
and acted for the lender in having the same properly se-
cured;" and he further substantially testifies that the
money so loaned to defendant was collected by him for

Murray, and was in his hands when the loan was applied for, and that he had no correspondence with Murray in regard to making the loan; that he does not know of any other person receiving money of Murray for the purpose of being loaned in Nebraska than himself, and that he has made many similar loans of Murray's money; hence, it is clear from his own evidence, that at the time the loan was applied for, the money was in his hands as the agent of Murray, and that he had made many similar loans for Murray in Nebraska. And by virtue of the letter of attorney from Murray to him, he had very general authority over the loan after it was made, and also in respect to the securities given by the borrower. He cannot in one moment act as the agent of the borrower, and in the next as the agent of the lender. · Such device or shift to evade the law, will not receive the sanction of courts. And in the eye of the law "it makes no difference whether the usurious interest is expressed in terms in the instrument given for the payment of the debt created by the loan, or whether it is taken as a bonus, or secured by any other corrupt agreement, device, or shift, at the time of the contract." *Richards v. Kountze*, 4 Neb., 205. And the mere fact that the bonus is called a commission, will not change the agency of the plaintiff from that of the lender to that of the borrower, or remove the taint of usury from the transaction, and therefore this case clearly comes within the rule laid down in the case of *Philo v. Butterfield*, 3 Neb., 259; but not within the exception to the rule: "That when the person who negotiates the loan acts *only* as agent for the borrower, the rule is different"—when the lender has not "by himself or his agent participated in any transaction prohibited by law, nor by any employment on his part afforded the means for infringing the law." In the case at bar the plaintiff was in the employment of the lender, he was intrusted with his money, and thereby the lender

afforded him the means to violate the law. The whole transaction is but one contract, and according to the law, as settled in this state, it is badly tainted with the vice of usury. It may be observed that much of the testimony of Perkins consisted of his understanding of the business transactions in respect to the loan. His understanding is not evidence; the witness must state facts. *Lacey v. Central National Bank*, 4 Neb., 183. The plaintiff's cause of action must be dismissed with costs.

DECREE ACCORDINGLY.