THE NEBRASKA RAILWAY COMPANY, PLAINTIFF IN ERROR,
v. HENRY C. LETT, DEFENDANT IN ERROR.

8   251
39  546
8   251
43   94

1. **Partnership:** RAILROAD CORPORATION: OFFICERS. L. was
president of the B., Ft. K. & P. R. R. Co. from 1869 to October,
1875, and in 1871 became a member of a construction company
to complete the road, the construction company to take all the
assets, assume the debts, and pay all claims and expenses of the
corporation. In 1875 the B., Ft. K. & P. R. R. Co. was merged
in the Nebraska Railway Co. In an action by L. against the
latter company for the *value* of services performed by him as
president of the B., Ft. K. & P. R. R. Co. from 1871 to 1875, in
procuring the right of way and promoting the interests of the
corporation, *held,* that he could not recover, he as a member of
the construction company having assumed to pay for such services.

2. ———. The two leading features of the contract of partnership
are a common interest in the stock of the company, and a per-
sonal responsibility for the partnership contracts.

3. ———: LIABILITY OF PARTNERS. Each individual member of
a partnership is answerable *in solido* for the whole amount of
the partnership debts, without regard to the proportion of his
interest, or the nature of the contract between him and his
co-partners.

ERROR from the district court for Lancaster county.
The case is stated in the opinion.

*O. P. Mason,* for plaintiff in error.

1. The court erred in its instruction to the jury and
in not instructing the jury as to the legal effects of the
construction contract, as requested by plaintiff in error.
*Beatty v. Gates,* 4 Ind., 154. *Myer v. Midland P. R. R.,*
2 Neb., 339. *Arctic Fire Ins. Co. v. Austin,* 69 N. Y.,
470. The testimony shows that there is nothing to be
done or that could be done as president after the road
was turned over to the construction company, more
than four years prior to filing of petition, except what
was done pursuant to the terms of said contract, and

by the terms thereof without compensation from the railroad company. The testimony also shows that whatever services were rendered or supplies furnished by plaintiff, aside from those done as president or director, were done for the sole benefit of the plaintiff's firm, and by him as a member thereof.

Plaintiff being a member of the construction company was bound by the provisions of the construction contract, including the performance of services, the payment therefor, and the assumption of indebtedness of the railroad company. Parsons on Contracts, 145. *Converse v. Shambaugh,* 4 Neb., 378. *Voorhees v. Jones,* 5 Dutch., 270. And any evidence varying or contradicting the terms of the construction contract were inadmissible. *Smith v. Moynihan,* 44 Cal., 55, and cases cited. *Reynolds v. Magness,* 2 Ired. (N. C.), 30. *N. O. Etc. R. R. v. Pressley,* 45 Miss., 66.

2. By the terms of the construction contract, all indebtedness of the railroad company was assumed by the construction company, and plaintiff being a party to the contract assented to the novation, and thereby released the railroad company, and the indebtedness to the railroad company was extinguished. *Butterfield v. Hartshorn,* 7 N. H., 348. *Ouxon v. Chadley,* 3 Barn. and Cress., 591.

3. When the construction company settled with the railroad company, and surrendered the contract, the plaintiff was bound by the settlement. *Noyes v. N. H. R. R.,* 40 Conn., 1. *Pierson v. Hooker,* 3 Johns., 68. Story on Partnership, §115 and cases cited. 1 Parsons on Contracts, 26, and cases cited. Moreover, by the terms of the contract, the firm of which he was a member, with his assent, received payment, and plaintiff's remedy, if he did not receive his share, was against the firm. *Noyes v. R. R. Co.; Supra.*

4. Whatever agreement plaintiff had with the rail-

road company to perform the same service to be performed by the construction company was merged in the construction contract. *Howard v. W. & S. R. R.*, 1 Gill., 311. *Munford v. Wilson*, 15 Mo., 540. *Miller v. Miller*, 4 Pa. St., 320. Chitty on Contracts, 9.

*Lamb, Billingsley & Lambertson*, for defendant in error.

In answer to the first point made by plaintiff in error, that nothing was done or could be done by Mr. Lett, as president, after the road was turned over to the construction company, we say:

1. That the construction contract did not wipe out the railroad, but left it in existence with a board of directors, a president, and superintendent.

2. The construction contract was not altogether one-sided, by the terms of which Converse, McCann & Co. were to do everything and the railroad company nothing; but the contract imposed upon the railroad company important duties, which required the existence and labors of a president and board of directors.

3. Hence we say that Mr. Lett, as president, either by the terms of the construction contract, or outside of the contract, performed services for the railroad company which neither Converse, McCann & Co., or he as a member of Converse, McCann & Co., was bound to perform. Mr. Lett's services as president of the railroad company were of such a character as forbid him rendering them under an employment or pay from Converse, McCann & Co., who were building this road by contract, and having everything turned over to them. Public policy, the rights of the state, the public, the corporation, and each individual stockholder, forbid such an arrangement.

The *contract* is for seventy-five miles of road in two

years.    There must be two parties at least to every *contract*.    Who was to act for the railroad?    Corporations can do business only through agents.    [Gen. Stat., 185, sec. 80.]

4.    Sections 135, 136, and 137 [Gen. Stat., 200], and all that portion of the law relating to railroads, grant unusual privileges and powers, and confer important and responsible duties upon such corporations, both during the period of construction and after the roads are completed, and the statute and the law have attached grave consequences to the corporation, and to the stockholders as well, in case of non-performance of these duties, and the corporation cannot absolve itself from these duties without consent of the state; and with these considerations in view we come to the consideration of the construction contract:

(*a*).    Mr. Lett, as president, procured rights-of-way, depot grounds, gravel beds, and stone quarries.    The president attended to the issuing of bonds, stocks, and the execution of mortgages, "and did all other acts in the construction of road and location of line."

(*b*).    The railroad company was to procure subsidies, donations, subscriptions, and lands, and turn them over to the construction company.

(*c*).    It must have officers to inspect the work and see if the construction company complied with its part of the contract.    There were many stockholders in the railroad company not in the construction company. Nemaha county had $60,000 worth of stock in the railroad company, and no interest in the construction company.    Hence the officers of the railroad company were necessary to the protection of those stockholders unrepresented in the construction company.

(*d*).    The above mentioned services could only be performed by the railroad company; and inasmuch as the state had granted the railroad company an impor-

tant franchise, also 20,000 acres of land, and Nemaha county had granted bonds to a large amount conditioned on the completion of the road, the railroad company were bound to employ officers to carry out the purposes of its creation.

5. The question whether these services were rendered to the railroad company or to Converse, McCann & Co., or whether any services were rendered by Mr. Lett other than those which the construction company were to perform, were put directly in issue by the pleadings, and under the instructions of the court the issue upon this point was found by the jury in favor of the defendant in error.

MAXWELL, CH. J.

On the thirteenth day of December, 1875, the Brownville, Fort Kearney & Pacific Railway Company and the Midland Pacific Railway Company were consolidated, the new company taking the name of the Nebraska Railway Company. In November, 1877, the defendant commenced an action against the Nebraska Railway Company for the *value* of services rendered by him as president of the Brownville, Fort Kearney & Pacific Railway Company from September 18, 1871, to October 13, 1875, in securing the right of way for and in aiding in the construction of said B., Ft. K. & P. R. R. The defendant recovered a judgment in the court below for the sum of $7,500. The cause is brought into this court by petition in error. On the trial of the cause the following articles of agreement were introduced in evidence.

"Articles of. agreement made and concluded this 18th day of September, 1871, by and between Benj E. Smith and William Dennison of Columbus, state of Ohio, and J. N. Converse of Union City, state of Indi-

ana, and such others as may hereafter be associated with them of the first part, and the Brownville, Fort Kearney and Pacific Railroad Company, a company organized under the laws of the state of Nebraska, party of the second part, *Witnesseth:* That the said party of the first part for and in consideration of the covenants and agreements hereinafter mentioned, do for themselves, their heirs, executors, administrators and assigns, covenant, promise, and agree to and with the said party of the second part, their successors and assigns, by these presents, that they the said party of the first part shall and will take and accept the road bed of the party of the second part in its present unfinished condition, being partly graded, and together with all the ties which they may have purchased; said road extending from Brownville, Nebraska, westward to the west line of Gage county, and that they will within two years from the date of these presents, complete the grading, tieing, bridging, ironing, and equipment of said Brownville, Fort Kearney and Pacific Railroad to the west line of Gage county, Nebraska, a distance of about seventy-five miles, and will furnish all the rails, chairs, fishplates, spikes, and other materials that may be necessary to construct a railroad of narrow or three feet guage, or a railroad of the ordinary guage of four feet eight and one-half inches, at the option of the party of the first part.

"If the said party of the first part concludes to construct a narrow gauge road, then the iron rails shall weigh not less than thirty-two pounds to the lineal yard, and if the same be of the ordinary gauge the rails shall weigh not less than forty-five pounds to the lineal yard. That the party of the first part *shall secure and pay for all rights of way* hereafter to be obtained,. also for the engraving or printing of all stocks or bonds, and the stamping and recording of the mortgage given

to secure the same. The party of the first part further agrees to furnish all the necessary locomotives, box cars, passenger and freight cars, which equipments in rolling stock shall not be less than $1,000 per mile in value, and such equipments to correspond with the gauge which may be adopted by said party of the first part. Said party of the first part do further promise and agree to build all necessary sidings, switches, and frogs (said sidings to measure same as main track), engine houses, passenger and freight depots, repair shops, water tanks, etc., and to pay to the said party of the second part, or on its behalf, all of the indebtedness of the same of every nature which has been incurred in grading and constructing said railroad, provided said indebtedness shall not exceed the sum of $50,000. And said party of the first part further agrees to iron and equip ten miles of said road from Brownville westward on or before the first day of December, 1871. It is further understood that the party of the first part shall not be required to construct said road beyond the distance of ten miles faster than they may be able to sell the first mortgage bonds hereinafter referred to at not less than seventy cents on the dollar with accrued interest, unless they may prefer so to do. In consideration whereof the said party of the second part does hereby promise and agree to exercise their authority, so far as their official acts may be necessary, in securing the right of way, depot grounds, gravel beds, stone quarries, etc., the issuing of stocks, bonds, and mortgages as the party of the first part may from time to time direct, provided *the party of the first part shall pay all expenses* necessary for the same. Said party of the second part shall do and perform all other official acts necessary in the location and construction of the line of said road as the party of the first part shall direct. Said party of the second part for them-

19

selves, their successors and assigns, do further promise
and agree to issue to the said party of the first part the
stock of said company to an amount equal to the sum
of $20,000 per mile, and deposit the same with G.
Moody, Esq., of Columbus, Ohio, as trustee, to be by
him delivered to the party of the first part as soon as
ten miles of iron has been laid and rolling stock put
on same, as heretofore specified in this agreement, on
said Brownville, Fort Kearney & Pacific Railroad:
*Provided*, That the stock issued or to be issued to
Brownville precinct to the amount of one hundred
thousand dollars, and sixty thousand dollars to be issued
to the city of Brownville, and the amounts of stock
necessary to be issued to *bona fide* subscribers to the
capital stock of said company, and which has been or
may hereafter be paid up in full, shall be and are hereby
excepted out of the amount to be so deposited with said
trustee; and no more stock shall be issued by said
company except by consent and request of the party of
the first part.   Said party of the second part do fur-
ther agree to execute and deliver to the said party
of the first part "first mortgage bonds" of the said
party of the second part to the amount of twelve
thousand dollars per mile on said railroad for a dis-
tance of seventy-five miles: *Provided*, That if said party
of the first part shall determine to build said road of
the ordinary, or four feet eight and one-half inch guage,
the said party of the second part shall issue and deliver
to said party of the first part first mortgage bonds on
said road to the amount of twenty thousand dollars per
mile, which bonds shall be secured by a mortgage upon
the road bed, rolling stock, franchises, etc., of said
railroad, and shall be payable in gold coin of the
United States, in not less than twenty years, and shall
be at seven per cent interest per annum, payable in
like coin semi-annually; principal payable in New York

City and at other places, as said party of the first part may direct; said bonds to be prepared and executed as the party of the first part may direct, and delivered to the trustee named in said bonds, to be by him delivered to said party of the first part from time to time as they may require in the construction of said railroad. Said party of the second part do further agree that they may deliver to said party of the first part fifty-two thousand dollars of "Brownville precinct bonds," now in New York, on their payment of the amount due Johnson & Brown on same, which is a part of the indebtedness of said party of the second part heretofore referred to, and they also agree to deliver to said party of the first part the further sum of thirty thousand dollars in like bonds now in the possession of the said party of the second part. Said party of the second part do further promise and agree to and with the party of the first part to set over, transfer, assign, and deliver to the said party of the first part all donations, subscriptions, or subsidies of every character, either of money, lands, or property that may have been heretofore or which shall hereafter be obtained by said party of the second part, as fast as they shall come in possession of the same, except sixty thousand dollars voted by the city of Brownville to said company, and such bonds and money as have already been paid in and expended on said railroad and in connection therewith; said party of the first part to have the free use of the road and equipments until the completion of this contract. Said party of the first part agree to pay the indebtedness of the company, not exceeding fifty thousand dollars, within sixty days from the date of these presents; and upon the delivery to the said party of the first part of the precinct bonds of Brownville precinct, heretofore referred to, said party of the second part agree to pay all other indebtedness over and above fifty thousand

dollars, if any such there be, within ten days from the date of these presents. It is expressly understood that under this agreement the party of the second part turn over and are to turn over to the party of the first part all the property owned and assets acquired or to be acquired by said company, with the exceptions herein-before stated, and that the company may perform such official duties as may. be necessary for a board of directors, and *that all expenses or outlay required shall be borne by the party of the first part: Provided,* that the board of directors shall receive no compensation for taking any official action where the same is attended with no expense. It is expressly stipulated and guar-anteed by the party of the second part, that the fifty-two thousand dollars of bonds with Johnson & Brown, of New York, cannot be sold for less than fifty-seven cents on the dollar, with interest at eight per cent on their face from February 28, 1871, and that said bonds can be redeemed at any time by the payment of twenty-six thousand dollars, with interest at the rate of eight per cent per annum from February 28, 1871, and that said sum of twenty-six thousand dollars need not be paid until said bonds are sold. That the remaining indebt-edness does not exceed twenty-two thousand dollars."

This contract is signed by Smith, Dennison, and Converse, for the party of the first part, and by the Brownville, Fort Kearney & Pacific Railroad Company, by its attorney in fact, whose action was fully ratified by the board of directors of said corporation on the 20th day of September, 1871.

The plaintiff in error set up the foregoing contract in its answer as a defense to the action, and alleged that the defendant in error was a member of the con-struction company, parties of the first part in the above instrument, and as such had agreed to pay all expenses incurred by said corporation in procuring the right of

way, or other exercise of its corporate power. The
defendant in error (plaintiff in the court below) in his
reply "denies that he became subject to or liable for
the execution of said construction contract made with
Converse, McCann & Co., in any manner, except for
such a liability as might arise incidently by reason of
his being a member of said co-partnership, or firm of
Converse, McCann & Co., like any other member of
said firm. That said firm was composed of ten other
persons besides this plaintiff, all jointly liable with this
plaintiff to said Brownville, Fort Kearney & Pacific
Railroad Company for the performance of the said
construction contract, and this plaintiff denies that any
of the services rendered by this plaintiff to said
Brownville, Fort Kearney & Pacific Railroad Company,
and sued for in this action, or that any of the moneys
by this plaintiff advanced to the said Brownville, Fort
Kearney & Pacific Railroad Company, sued for in this
action, were rendered or advanced as a member of the
firm of Converse, McCann & Co.—said construction
company—or were rendered or advanced to the said
firm of Converse, McCann & Co., or were any of them
in any way embraced or included within the terms or
provisions of the said construction contract, or even
referred to therein," etc.

Turning to the petition we find the cause of action
set forth as follows: "That from the 18th day of Sep-
tember, 1871, until October 12, 1875, inclusive, he was
the president of the said Brownville, Fort Kearney &
Pacific Railroad Company, and that during said time
he devoted his whole time to promoting the interests
of said company in procuring the right of way and in
all things aiding the construction and management of
said railroad company, and that said services so ren-
dered by plaintiff were reasonably worth the sum of
three thousand dollars for each and every year," etc.

We have in this agreement:

*First.*  A promise by the construction company—of which Lett was a member—to pay to the party of the second part, or on its behalf, all of the indebtedness of the same of every nature incurred in grading and constructing the railroad, not to exceed the sum of fifty thousand dollars.

*Second.*  The corporation was to secure the necessary right of way, depot grounds, gravel beds, stone quarries, etc., and was to issue stocks, bonds, and mortgages from time to time as directed by the construction company. The construction company to pay all necessary expenses of the same.

*Third.*  The corporation was to turn over to the construction company all the property owned, and assets acquired or to be acquired, with certain exceptions specifically designated, and the corporation was required to perform such official acts as were necessary to be performed by a board of directors, all expenses and outlay to be borne by the construction company.

We are told that there is no proof that Mr. Lett was in the employment of Converse, McCann & Co. But it was unnecessary to prove an employment. It is admitted that he was a member of the firm, and as a member of such firm had agreed to pay for all services rendered by him as president of the corporation.

The two leading features of the contract of partnership are, a common interest in the stock of the company, and a personal responsibility for the partnership engagements. 3 Kent Com., 24. Each individual member of a partnership is answerable *in solido* for the whole amount of the debts, without reference to the proportion of his interest, or the nature of the stipulation between him and his associates.   Id. 32.

It is clear that no services were rendered by Lett as president of the corporation, which he as a member of

the construction company was not required to pay for. The court therefore should have instructed the jury to find for the defendant. While it is clear that Lett cannot maintain an action against the defendant in the court below, for the services set forth in the petition, it is apparent from the testimony that he rendered valuable services to the construction company while he was a member thereof, for which it is possible he may have a claim against his former partners. It is unnecessary to review the various errors assigned, as his liability as a partner is decisive of the case. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.