Cheney v. Eberhardt.

PRENTIS D. CHENEY, APPELLANT, v. JOSEPH C. EBERHARDT AND OTHERS, APPELLEES.

1. **Finding of Court on Questions of Fact:** HOW TREATED IN THE SUPREME COURT. In cases tried to the court without a jury, the finding on questions of fact is entitled to the same respect in the supreme court, on appeal, as would be accorded to the verdict of a jury under like circumstances.

2. **Usury:** LOAN BY AGENT. It is a salutary rule, and one that should be rigidly applied in all proper cases, that where one who is intrusted with the business of loaning money exacts for its use, either directly or indirectly, by whatsoever shift, or device, interest in excess of the rate permitted by the statute, the transaction is usurious and will be judged accordingly.

APPEAL from Nemaha county.

*J. H. Broady*, for plaintiff, appellant.

*T. B. Stevenson*, for defendants, appellees.

LAKE, J.

The action in the court below was for the foreclosure of a mortgage, and resulted in a general finding of all the equities in favor of the defendant Eberhardt, who alone had answered, and a judgment in pursuance thereof dismissing the case. The plaintiff has brought the case here by appeal.

The defense interposed by the defendant in his answer is, in substance, that the entire consideration of the several notes secured by said mortgage was usurious interest, exacted by the plaintiff in making to him a loan of money. It is alleged, and clearly established by the proofs, that in this transaction while Eberhardt actually obtained only $485.00, he gave in return securities as follows, viz.: One note payable in five years for $500.00, and five interest notes for $50.00 each, payable in one, two, three, four, and five years respectively, and all secured by mortgage on the real estate in question. Also five other notes for $35.00 each, payable in one, two, three, four, and five years respectively, which were likewise secured by a second mortgage on the same premises; thus making the actual cost to the borrower for the money obtained by him something over seventeen per cent per annum for each year of the term which the loan had to run. As to these facts there is no dispute.

It also appears that the $500.00 note and the five $50.00 notes, which were taken nominally to one Byron Murray, have been fully paid, as have also two of the $35.00 notes. The $35.00 notes and mortgage were given directly to the plaintiff, Prentis D. Cheney.

The plaintiff endeavors to maintain the legality of this loan on the theory that he was employed by Eberhardt to negotiate it, and that throughout the entire transaction he acted solely as his agent, and not as the agent of Murray, from whom he claims to have obtained the money, after much effort. The five $35.00 notes, amounting to seven per cent per annum for the whole term of the loan, he claims were given as the agreed compensation he was to receive for obtaining the loan.

It must be admitted that the transaction was so shaped, and hedged about, as to make this claim appear to the superficial observer somewhat plausible; but we think enough is brought to light to show very clearly that, even if the money received by Eberhardt had come from Murray, he had confided the business of loaning it to the judgment and discretion of Cheney, holding him responsible for the safety of its investment. This much we think is plainly inferable from the testimony of Cheney himself. He says: "I gave Murray my personal receipt for the money, binding myself to get from Eberhardt the notes and mortgage on the land, and the abstract of title, as promised in the application, and deliver the same to Murray as soon as possible, or to return the five hundred dollars in case I did not get the notes and security." Again: "I sent the five hundred dollars to Perkins in a bank check, to be handed to Eberhardt when the security was perfected, and abstract of title furnished, as provided in the application." This man Perkins seems to have been the confidential go-between through whom Cheney transacted that part of the business done in Nebraska. Cheney testifies further: "I strongly urged Murray to accept the security and make the loan; and he was thereby convinced that the security was sufficient, and consented to make the loan." * * * "I

sent Murray's papers to him, and did not see them again for three years, except the yearly interest notes, which were sent to me for collection, they having been made payable at my office." And right here a not impertinent inquiry is suggested by this testimony. If Cheney acted solely for Eberhardt as he claims, and not for Murray, why were these yearly interest notes made payable at his office in Illinois, and several hundred miles from Murray's place of abode? If he were indeed the agent alone of Eberhardt, then this man Murray certainly displayed far greater confidence in him than is usually reposed by one business man in the agent of another. On the whole, while the evidence of usury is not quite as conclusive as we found it to be in the case of *Cheney v. Woodruff*, 6 Neb., 151, still we think it ample to support the finding of the court below, which is entitled to the same respect here as would be accorded to the verdict of a jury under like circumstances. *Seymour v. Street*, 5 Neb., 85. *The A. & N. R. R. Co. v. Washburn, Id.* 117. We hold it to be a salutary rule, and one that should be rigidly applied in all proper cases, that where one who is intrusted with the business of loaning money exacts for its use, either directly or indirectly, by whatsoever shift or device, interest in excess of the rate permitted by the statute, the transaction is usurious, and will be judged accordingly. Such, in effect, has been the holding of this court as often as the question has come before it. *Philo v. Butterfield*, 3 Neb., 256. *Cheney v. White*, 5 Neb., 261. *Cheney v. Woodruff*, 6 Neb. 151.

JUDGMENT AFFIRMED.