JOHN L. MCCONNELL, APPELLANT, V. FIRST NATIONAL BANK OF LINCOLN ET AL., APPELLEES.

FILED NOVEMBER 8, 1893. No. 5074.

1. **Accounting**: PLEADING: COSTS: EQUITY. Where the answer admits there is due the plaintiff a certain sum, much smaller than claimed in the petition, and all the averments of new matter in the answer are unequivocally denied by the reply, judgment must be for the amount admitted to be due. The allowance of costs being discretionary, none are taxed as incident to the above judgment, because of the confused condition of said issues as presented in the district court.

2. **Special Findings** : CONFLICTING EVIDENCE: REVIEW. Upon the request of the plaintiff therefor, a special finding as to a very material disputed fact was made by the trial court in favor of the defendant. *Held*, In the absence of a clear preponderance of the evidence to the contrary, that such finding conclusively establishes the existence of the fact as found.

3. **Accounting.** A sheriff in possession of a stock of goods, pending their sale for the satisfaction of certain attachments in his hands, having sold a part of said goods, and collected claims due the attachment defendant, paid the proceeds of such sales and collections to the purchaser of the stock, who bought irrespective of such sales and collections. *Held*, In a suit for an accounting between the attachment defendant, who has paid all claims against him, and the recipient of such proceeds and collections, that said attachment defendant is entitled to recover the amount of such proceeds with interest from the time they were received by said purchaser.

APPEAL from the district court of Lancaster county. Heard below before HALL, J.

*J. R. Webster, E. P. Holmes,* and *Webster, Rose & Fisherdick,* for appellant.

*Marquett, Deweese & Hall* and *Pound & Burr, contra.*

RYAN, C.

The plaintiff sued the defendants John R. Clark, the First National Bank of Lincoln, Nebraska, and Louie Meyer, in the district court of Lancaster county, claiming that the said Meyer agreed to purchase, for the benefit of the plaintiff, a certain stock of goods, and that the defendant John R. Clark, who was cashier of the First National Bank aforesaid, on behalf of the said bank, agreed to furnish the means for the purchase of said stock, and that the said purchase should be for the benefit of the plaintiff; and that after the purchase aforesaid had been made there was a large profit made upon the sale of the said stock of goods, which, after the payment of all incidental expenses, belonged to the plaintiff. The plaintiff prayed an accounting as to the profits and incidental expenses aforesaid, and that the plaintiff have judgment for such amount as should be found due him upon such accounting. The specific allegations of the pleadings will be noticed more particularly hereafter, as such notice becomes necessary in the consideration of the facts.

1. The above is a very general statement of the relief prayed, and of the facts upon which such relief was claimed. In the commencement of his petition, however, the plaintiff alleged that on the 20th day of December, 1884, he was engaged in the retail dry goods business, and that at that time the plaintiff, in order to secure the sum of $20,000, previously advanced by the said bank, made and executed a chattel mortgage upon his entire stock of merchandise and delivered the possession of said merchandise to the defendant John R. Clark, as cashier, for the First National Bank; that after the execution of said mortgage,

certain creditors of plaintiff sued out writs of attachment against him, and caused the same to be levied upon the merchandise, subject to the aforesaid mortgage.

The petition further alleged "That afterwards said defendants John R. Clark and the First National Bank of Lincoln, Nebraska, having sold a large amount of said merchandise under and by virtue of said mortgage foreclosure, and having realized a much larger amount than was sufficient to satisfy said mortgage, together with all costs and expenses of foreclosure, delivered the remaining part of the said merchandise to the sheriff of Lancaster county, Nebraska, who duly offered said merchandise for sale to satisfy the claims and demands of said attaching creditors on the 11th day of April, 1885." As to the failure of Clark and the First National Bank to render an account with reference to the foreclosure aforesaid, the petition alleged that they had wholly failed and refused to render such an accounting, although the said defendants had sold a large amount of said stock in excess of the amount of plaintiff's indebtedness under said mortgage. The prayer of the petition was broad enough to justify the plaintiff's recovery of whatever relief the facts showed him entitled to in respect to the said foreclosure and failure to account.

In the answer of John R. Clark and the First National Bank there was the following allegation: "Defendants admit that said bank has in its hands the sum of $199.87, which was realized from the sale of said goods under said mortgage, more than was necessary to pay said mortgage with interest thereon and the costs and expenses in connection with the foreclosure of the same; that an account of this amount was rendered by said bank to the said John L. McConnell at the time of the cancellation of his indebtedness to this bank under and by virtue of said chattel mortgage, and that said money has been in said bank with the knowledge of the said plaintiff and subject to his order

since about the first day of March, 1885, but that the said McConnell has failed, refused, and neglected to receive the said money from this defendant; that an account was rendered to said McConnell showing the amount of goods sold under said mortgage, also the amount in excess of said mortgage, and the amount of expenses and costs in connection with the foreclosure of said mortgage, which said account showed a balance in the hands of said bank of $199.87, subject to the order of said John L. McConnell.''

This answer was followed by the reply of the plaintiff in the following words: "Comes now the said plaintiff and for reply to the answer of the said defendants filed herein denies each and every allegation of new matter therein contained." It will be observed that this averment of the defendants, that there was due from the bank, on account of the foreclosure, a balance of $199.87, was denied by McConnell in his reply. This anomalous condition of the pleadings probably accounts for the action of the district court in denying relief as to the amount admitted to be due from the bank.

It is claimed, however, in argument, that the proofs show that there was not only this amount, but even a very much larger sum due on this account from the bank to McConnell. Apparently, as merely incidental to the inquiry, which we shall hereafter note, McConnell testified that the sales under the chattel mortgage amounted to $23,866.26. The debt secured was $19,500. The sales, which were private, extended over the interim between December 20, 1884, and March 24, 1885, and the interest which accrued between these dates, at the rate of ten per cent per annum, was $509.17. This would leave a balance due McConnell of $3,857.09, the incidental expenses not being considered. There was evidence, however, that out of this there was paid, with the assent of McConnell, to Harwood, Ames & Kelly, McConnell's attorneys, the sum of $500. There was paid to Mr. Pratt, for superintending the foreclosure,

the sum of $300. The evidence as to the incidental expenses necessary to the foreclosure, carried on by private sales for the period of three months, is not at all direct. On the part of McConnell it was testified by him that, after April 11, succeeding the said foreclosure, the expense of running the store was not to exceed $600 a month. Opposed to this, and given as on the same hypothesis, was the evidence of Louie Meyer that these expenses amounted to from $800 to $1,000 per month. Assuming the highest basis of computation as correct, there would not be due from the bank to McConnell even $199.87, the amount which is admitted by the answer. Reckoned upon the basis afforded by McConnell's testimony, there would be due from the bank to McConnell a balance of $1,577.10. This evidence was given apparently with reference entirely to transactions had after April 11, 1885, and therefore affords very unsatisfactory data for the consideration of transactions which occurred between December 20, 1884, and March 24, 1885. The district court, however, by its general finding, must have concluded that there were no sufficient proofs on which to base a decree in favor of McConnell for any overplus arising from sales on the foreclosure of the mortgage. It would seem, however, that to the extent of $199.87, conceded by the bank in its answer to be due, there should have been a finding in favor of McConnell for that amount. In view of the anomalous condition of the pleadings, however, (that is, the answer admitting this amount to be due and the reply denying it), we are of the opinion that no costs should be taxed in favor of the plaintiff on account of his right to recover from the bank the aforesaid sum of $199.87, conceded by the bank to be due him. The decree of the district court, in this respect, is therefore modified to the extent of allowing the plaintiff, as against the aforesaid bank, a judgment for $199.87, without interest or costs.

2. The next matter which demands our consideration

seems to have been that with reference to which this action was principally brought. In respect to this branch of the case the averments of the petition were that, after the foreclosure to which reference has been made, John R. Clark and the First National Bank of Lincoln delivered the remaining part of the merchandise of the plaintiff to the sheriff of Lancaster county, Nebraska, who duly offered said merchandise for sale, to satisfy the claims and demands of attaching creditors, on the 11th day of April, 1885. It is possible that an attempt to epitomize the statements of the petition in this regard may do injustice either by the omission of some important matter, or in some other respect, wherefore it is that the allegations will be quoted in *hæc verba*. The following averments occur in the petition:

"Fourth—Plaintiff further represents to the court that in order that said stock of goods might sell for the greatest possible amount, and its full value obtained at said sheriff's sale, this plaintiff was desirous of competition with bidders present at said sale, and in order to accomplish the same and purchase said stock without sacrifice to this plaintiff or to his creditors, plaintiff consulted and advised with defendant John R. Clark and procured his consent and agreement to advance this plaintiff from said defendant bank such sum of money as might be necessary to enable plaintiff to purchase said stock at said sheriff's sale. And it was further agreed that all of said business and the purchase of said stock should be in the name of the defendant Clark or the said First National Bank.

"Fifth—That afterwards said Clark, professing friendship for said plaintiff, and advising in this plaintiff's behalf, advised the purchase of said stock in the name of another person other than this plaintiff or the said First National Bank, representing that it would be a more business-like transaction and more consistent with its, the said bank's, method of doing business, this plaintiff's credit

having been previously impaired by reason of said attachments aforesaid. That, acting under the instructions of the said defendant Clark, and confiding in his sincerity, honest purpose, and intention, it was agreed by this plaintiff and defendant Clark that he should procure some person to act on behalf of this plaintiff as in manner aforesaid, and in plaintiff's place, who should, for plaintiff's benefit and use, purchase said stock, defendant Clark agreeing to advance the necessary amount of money as aforesaid; that afterward defendant Clark informed this plaintiff that he had procured the consent of said defendant Meyer to act for this plaintiff, and who should purchase said stock and hold the same under the instructions of this plaintiff and in trust for him. And it was further agreed and understood that in consideration of such services as were agreed to be rendered this plaintiff by the said Meyer, he should receive from plaintiff the sum of $500.

"Sixth—That acting under and by virtue of said arrangement, agreement, and understanding, and relying upon the promises of the said defendants, and upon the terms aforesaid, on the 11th day of April, 1885, at said sheriff's sale, this plaintiff advised and instructed the defendant Meyer to bid at said sale, and said stock was purchased in trust for this plaintiff by the said defendants through and by the said defendant Meyer for the sum of $20,200; that said Meyer, acting for plaintiff and the other defendant, and under plaintiff's instructions and advice, opened said stock of goods so purchased to the general trade and continued the sale of said stock at retail until on or about the month of April, 1886; that during said time said Meyer, upon the advice and instructions of this plaintiff, paid to the defendants Clark and the First National Bank the sum of $20,200, with interest thereon at the rate of ten per cent per annum, previously advanced by the said Clark and the First National Bank in accordance with the agreement and understanding aforesaid; and also paid all costs and ex-

penses of carrying on said business; that in the month of
April, 1886, said Meyer, for this plaintiff and under his
advice and instructions, sold the entire remaining amount
of said stock to one Joseph Shoenberg for the sum of
$10,000 in cash, and paid said amount so received to the
defendant Clark and the First National Bank."

"Seventh— * * *   That said defendants John R.
Clark, the First National bank, and Louie Meyer, in vio-
lation of all agreements with this plaintiff as aforesaid,
ever since said sheriff's sale on April 11, 1885, up to the
present time, and in breach of the trust on their part as-
sumed on behalf of this plaintiff, have conspired together
to cheat and defraud this plaintiff, and plaintiff alleges the
fact to be that said defendants Clark and the First Na-
tional Bank agreed with plaintiff to purchase said stock
and advance the money as aforesaid, and so instructed and
advised plaintiff as above set forth, and so procured the
said defendant Meyer to purchase said stock in pursuance
with the conspiracy previously planned by and between
the said defendants to cheat, defraud, and deprive plaintiff
of his rights in the premises, and in pursuance with such
conspiracy to defraud and cheat plaintiff have failed and
refused to render an accounting of the proceeds of said
sale as above set forth, and have refused to pay over to this
plaintiff the large amount of money in their hands arising
from said sale, belonging to this plaintiff by reason of said
agreement and trust aforesaid; that during all the times
herein mentioned this plaintiff was unable to ascertain
from the books of account the true account of the items of
receipts and expenditures, as the same were kept by the de-
fendant Meyer, and plaintiff was refused access thereto, so
that plaintiff has no knowledge of the true amount owing
by said defendants to this plaintiff.

"Eighth—Your petitioner further represents that al-
though he from time to time applied to the said defendants,
and requested them to come to a full and fair accounting

with respect to the said transactions, with which just and reasonable request your petitioner still hoped that said defendants would have complied, as in justice and equity they should have done, but said defendants absolutely refused so to do. They have pretended that they have not received and applied to their own use more than their proportion of the proceeds received from said sales, whereas your petitioner charges the contrary thereof to be the truth, and so it would appear if the said defendants would set forth a full and true account and several their receipts and payments in respect of the said transactions heretofore set forth in this petition. Your petitioner charges that said defendants have in fact received the sum of $20,000 and upwards beyond their proportion of the proceeds and profits of said sales. Wherefore this plaintiff prays that an account may be taken of all and every the said dealings and transactions from the time of the commencement thereof, and also an account of the moneys received and paid by the said defendants respectively in regard thereto, and that the said defendants may be decreed to pay to your petitioner what, if anything, shall upon the taking of such accounting appear to be due to him, your petitioner being ready and willing and hereby offering to pay to said defendants, or either of them, what, if anything, shall be due them or appear to be due them, or either of them, by this plaintiff. Plaintiff prays for such other and further relief as plaintiff may in equity be entitled."

In the answer filed these averments were denied, both by Meyer in one answer, and by Clark and the First National Bank jointly in another answer. Just preceding the commencement of the trial the plaintiff dismissed his action as to the representative of the defendant John R. Clark, he having died on or about August 2, 1890. At the conclusion of the trial, but before the rendition of judgment, there was filed in this cause the following request, omitting the formal parts: "Plaintiff requests a special finding of fact

as to whether the purchase made by Louie Meyer of the McConnell stock of goods at the sheriff's sale April 11, 1885, was made under any arrangement between McConnell, Meyer, and Clark, or either two of them; that the said goods were purchased in the interest of or to the use of John L. McConnell."

In the decree which was finally entered, the finding of fact requested is made in the following language: "And thereupon the trial of this cause proceeded, and after hearing the remaining testimony of witnesses adduced and the arguments of counsel is submitted to the court, on due consideration whereof the court finds for the defendants, and *finds specially that the defendant Louie Meyer, at the time he purchased the stock of merchandise at sheriff's sale, April 11, 1885, purchased the same without agreement to hold the same in the interest of or to the use of the plaintiff John L. McConnell*, and finds no equity in the bill. Wherefore it is ordered, adjudged, and decreed that this action be dismissed at the cost of plaintiff."

The evidence as to the matters specially covered in this finding was very conflicting. On behalf of McConnell there was introduced in evidence many statements of Meyer directly substantiating, so far as he was concerned, the claim made in the petition as to the trusteeship of the said Meyer. On the other hand, there were equally convincing and numerous statements of the plaintiff McConnell, that while the goods were in the hands of Mr. Meyer he had no interest therein whatever. In fact, his testimony during the existence of the alleged trusteeship of Meyer with respect to the sale of the goods was upon a creditor's bill brought against McConnell and his wife; that he had no property whatever, and had turned over everything that he had any interest in to his creditors. Between McConnell and Meyer there seems to have been a rivalry as to which should be most successful in creating evidence by admissions contrary to his own interest. There was, however, no

party who relied upon these representations to his own injury, and, therefore, there was simply to be considered the statements of each of these parties as evidence in this respect. Of course, statements made by a party against his own interest are competent evidence in any case. Statements, however, in favor of the party's interest are not of equal competency.

To sustain the contentions of the First National Bank there were introduced in evidence the statements of John R. Clark made during his lifetime to several parties, to the effect that the claim made by McConnell was wholly unfounded, was unjust, false, and fraudulent in every respect. His answer containing averments to the same effect was also introduced in evidence after proof of his signature to the verification thereof. This class of testimony is wholly inadmissible, and has not been at all considered in reaching the conclusions at which we arrive—a course fully justified by the decisions of this court. (*Kennedy v. Otoe County Nat. Bank*, 7 Neb., 65; *Merchants Bank v. Rudolf*, 5 Neb., 527; *Nebraska City v. Lampkin*, 6 Neb., 32; *Mills v. Saunders*, 4 Neb., 190; *Gillette v. Morrison*, 9 Neb., 402.) This incompetent testimony being rejected, however, there still remained an irreconcilable conflict in the evidence, without a clear preponderance in favor of either party.

In view of the finding made upon the request of the plaintiff, the language of section 297 of the Code of Civil Procedure is not wholly without application to this controversy. The section referred to is as follows : " Upon the trial of questions of fact by the court it shall not be necessary for the court to state its finding except generally for the plaintiff or defendant, unless one of the parties request it with the view of excepting to the decision of the court upon the questions of law involved in the trial. In which case the court shall state in writing the conclusions of fact found separately from the conclusions of law." The record shows that an exception was taken to the find-

ing of the court upon the special request made. In the presentation in this court, however, it does not appear that any question of law arises upon this finding. There is simply a question of fact to be determined by a preponderance of the evidence.

In *McLaughlin v. Sandusky*, 17 Neb., on page 112, is the following language : " It is a well established rule of this court that the findings of inferior tribunals   *   *   * will not be interfered with unless clearly wrong. And this rule applies to cases brought into this court upon appeal as well as upon error. (*Armstrong v. Freeman*, 9 Neb., 11; *Richardson v. Steele*, 9 Neb., 483; *Cheney v. Eberhardt*, 8 Neb., 423.)"

In *Worthington v. Worthington*, 32 Neb., on page 338, the language of NORVAL, J., who delivered the opinion of the court, was as follows : " The trial court found the disputed question of fact against the plaintiff. It is impossible to reconcile the testimony, and it is quite evenly balanced. By seeing the witnesses and hearing them testify, the court below is better able than we to judge which witnesses were entitled to credit and who should be disbelieved. It is well settled in this state that a finding of the district court on conflicting evidence is conclusive on appeal to the supreme court, unless there is a clear preponderance of evidence against the finding. (*Brown v. Hurst*, 3 Neb., 353; *Helling v. Mortgage Security Co.*, 10 Neb., 611; *Courtnay v. Price*, 12 Neb., 188; *Jennings v. Simpson*, 12 Neb., 558; *Aultman v. Patterson*, 14 Neb., 58; *McLaughlin v. Sandusky*, 17 Neb., 110.)" Following these authorities the special finding of the district court will not be reversed, but must wholly conclude the contention as to which the said finding was applicable.

3. The averments of the petition, as well as its prayer, were broad enough to cover any transactions between the plaintiff and either of the defendants. There is one branch of this case remaining, as to which the evidence seems to have

been introduced rather incidentally, and yet, in view of the petition, this phase of the case must receive attention, for it is not covered by the special finding. The relief granted might preclude our reviewing the matter upon which we are about to enter, if the evidence left any room for doubt as to the facts. The sheriff's sale, which occurred on April 11, 1885, was conducted by Mr. Melick, the sheriff of Lancaster county. This sheriff was sworn as a witness and testified that he took charge and control of the stock of goods formerly owned by John L. McConnell, about the 24th of March, 1885, and sold the stock on the 11th of April following; that he turned over to Mr. Meyer about $942; that he had had some notes to collect, but whether the proceeds of any were included in this $942 he was not able to remember; that he turned over this amount to Mr. Meyer simply as he turned over the stock to him; that he simply turned over everything that was in his possession; that Mr. Meyer told him that he, Meyer, was representing the bank; that witness simply sold the stock of goods to Louie Meyer and turned the store over to him, and made some collections along out of the sale of the stock, and sold some goods and turned over the proceeds of these collections and the proceeds of the goods to Louie Meyer; that he was in possession of the stock of goods by virtue of writs of attachment, and that the orders of the court were to advertise and sell the stock; that McConnell told witness that whatever Meyer did in the matter was satisfactory to him, and that he turned over the money to Meyer with McConnell's consent. When asked what McConnell said in giving his consent, this witness said: "I don't remember just what transpired at the time; only I remember that McConnell said to me that whatever Louie Meyer did in the matter would be satisfactory to him." Whether any of these conversations were in McConnell's presence the witness said he did not remember, but that he had no hesitancy, when he figured out what amount he had

on hand, in turning it over to Meyer, when he was told it was satisfactory to McConnell, and that he gave Meyer a check in McConnell's store at the desk.    The check to which witness refers was in the words and figures following:

"LINCOLN, NEB., 4–12–1885.

" Pay to order of Louie Meyer 942$\frac{48}{100}$ dollars.

"$942.48.                               S. M. MELICK.

"To First National Bank, Lincoln, Nebraska."

Indorsement on back of check: "Louie Meyer." On face of check were the words: "First National Bank, Lincoln, Neb., April 15, 1885.    Paid."

In relation to this same transaction Mr. Meyer testified that Mr. Melick told him that the $900 paid was for goods they had sold while invoicing.    He was then asked the following questions:

Q. Was there any understanding or agreement or knowledge on the part of John L. McConnell, so far as you know, that you was getting that $900?

A. I don't know about that.    I never had any agreement with McConnell in my life, of that kind.

Q. Did you have any understanding or agreement with McConnell that he was paying that $900 to you?

A. No, sir.

Q. Or whether it should belong to him in any way?

A. It was a part of the attachment execution.

Q. Was there any agreement between you and him?

A. No, sir.

Q. That he should have it thereafter in any way?

A. Never.

Mr. Meyer further testified that he knew they did not make an invoice when he bought the stock.    There had been an invoice made by the sheriff, he thought.    Whether any of the goods had been sold, he learned from Sheriff Melick, who told him so; but that he never checked up the goods on the invoice to know whether what he got was invoiced or not.    In relation to this matter John L. McConnell, the

plaintiff, testified that the sheriff took possession the 24th day of March, and that the doors were closed from that time until the day of sale, April 11, so far as general business was concerned; it was not closed but what people came in and out; no sales were made at wholesale or retail that witness McConnell knew of; that the sheriff took an inventory, and that was all that was done; if anybody came around that was supposed to be a party that wanted to buy the stock they were allowed to inspect the stock; that when the sale was made on the 11th of April, the purchaser, Mr. Meyer, took possession of the stock immediately.

Upon payment of his bid Mr. Meyer received from Sheriff Melick a receipt, from which we quote as follows: "Received of Louie Meyer the sum of twenty thousand two hundred dollars, in payment of the goods, wares, merchandise, fixtures, safe, lamps, chandeliers, stove, and all the goods and effects of whatsoever name and nature situate in a certain store building known as the 'McConnell store,' being No. 1031 O street, in the city of Lincoln, Lancaster county, Nebraska, all of which goods and effects were struck off to said Meyer, he being the highest and best bidder under and by virtue of the following orders of sale and writs issued in the following cases, to-wit: 'In the district court of Lancaster county, Nebraska.'" Here follows a list of the titles of cases, sixteen in number, in each of which John L. McConnell was defendant. This receipt was dated April 13, 1885, and was signed "S. M. Melick, sheriff."

There was introduced in evidence no one of the processes under which the sheriff acted in the above matter; nor was there introduced any return of the sheriff as to the sale made April 11, 1885. The only official record or recitation we have as to what was really sold is contained in the receipt above quoted. This is not at all at variance with the testimony of any witness, but rather con-

sonant with all the testimony we have quoted so far as it relates to the sum of $942.48 paid by the sheriff to Louie Meyer. In none of the evidence is there any showing whatever that McConnell or his creditors, or any of them, received any benefit on account of this payment by the check of the sheriff. It is shown by the testimony of McConnell, as to which there is no dispute on this point, that all the judgments against him have been satisfied; that of the firm of Bates, Reed & Cooley being settled last in order of time. In the light of all this testimony there is no room for doubt that the sheriff improperly paid this money to Meyer, and that Meyer has retained the same without the knowledge and acquiescence, so far as the evidence shows, of John L. McConnell. If this was an action against the said sheriff upon his bond for the recovery of this money wrongfully paid to Meyer, the testimony that the sheriff gave that he paid the money to Meyer with the consent of McConnell, might be pertinent. In this action, however, the suit is by McConnell, and Meyer alone, so far as this transaction is concerned, is liable. It matters not whether this money was paid to Meyer with the acquiescence and knowledge of McConnell or not; certain it is that, so far as the record shows, Meyer has never accounted for it. This action was brought for an accounting as between the plaintiff and all or any one of the defendants. The proofs clearly trace this money into the hands of Meyer. He has not shown that he has paid it to McConnell or in any way applied it to his benefit. There is not an intimation in any of this evidence which is quoted —which is in substance all there is in the record on this point—that Meyer bought anything but the stock of merchandise and certain stoves and other necessary furniture in connection therewith. It is not pretended that the goods were offered for sale by the invoice; rather they were offered for sale as they appeared upon the shelves and in the show-cases in the store-room in which they

had formerly been placed by McConnell. · The sale of
these goods in no way entitled the purchaser to any-
thing except the goods themselves and such furniture as
was actually sold in connection therewith. To allow a pur-
chaser at such a sale to bid as against others upon goods
which were actually in sight, and then after the purchase
to permit the buyer to· receive payment of money in the
hands of the sheriff, which he should have applied to the
satisfaction of claims which he held for collection under
the orders of the court, would be to sanction a fraud, not
only as against other bidders, but as well against the judg-
ment defendant. This cannot be sanctioned. Nor by this
reference to the sales made during invoice do we desire to
be understood as sanctioning such a practice. Possibly,
however, the sheriff was acting under an order of the
court which allowed a private sale of the debtor's goods
during invoice. We will not assume that he was without
authority. The fact remains, however, that this money
was received from the proceeds of the sales of goods and
perhaps the collection of accounts due McConnell. In any
event the money so received was the money of McConnell,
which the sheriff should have devoted to the payment of
his indebtedness, with the collection of which he was en-
trusted. He did not do so. The debts have been paid.
Meyer has retained this money, and as no creditor seems,
in the light of the evidence, to have an existing claim
against this sum of $942.48, it results that it should be
paid by Meyer to McConnell. This money was received
April 12, 1885, from which time interest at the rate of
seven per cent per annum should be reckoned on the amount
received. Computing this interest for eight years and a
half,—a space of time a little short of what it really was,—
the principal and interest amount to $1,503.25, for which
amount, with costs, plaintiff is entitled to judgment as
against the defendant Louie Meyer.

In addition to the above item, the plaintiff claims that he

should have judgment against the defendant Meyer for the value of the stove, the safe, and other furniture. It will be noted that these were either expressly enumerated in the receipt given by the sheriff to Meyer, or were covered by the comprehensive description of the property which Meyer purchased at the said sheriff's sale.

The judgment of the district court is reversed, and a decree will be entered in this court against the First National Bank of Lincoln, Nebraska, for the sum of $199.87, with interest at seven per cent per annum from the date of the filing hereof, without costs; and against Louie Meyer for the sum of $1,503.25, with interest from the date of the filing hereof at the rate of seven per cent per annum thereon.

DECREE ACCORDINGLY.